# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

**WILLIAM C. GUTHRIE, on behalf of the
UNITED STATES OF AMERICA,**

      **Plaintiff/Relator,**

**vs.**

**A PLUS HOME HEALTH CARE, INC.;
TRACY A. NEMEROFSKY, individually;
STEPHEN L. NEMEROFSKY, individually;
ALAN S. BUHLER, M.D.; SAM SAREH, M.D.;
STEVEN R. HORNREICH, M.D.; CRAIG P.
PROKOS, M.D.; MARK J. ROGOVIN, D.O.;
GARY M. WOLFSON, M.D.; NURIA
RODRIGUEZ, M.D.; LYNN BUHLER;
CHRISTY SAREH; FORTUNA HORNREICH;
CINDY PROKOS; MEREDITH ROGOVIN;
STACEY WOLFSON; and, KEIFFER WYBLE,**

      **Defendants.**

_____/

## QUI TAM COMPLAINT

**COMES NOW**, Relator, William C. Guthrie ("Guthrie"), and brings this Qui Tam

Complaint in the name of the United States of America ("USA"), by and through his undersigned

attorneys, Rotella Law, P.A., and alleges as follows:

## SUMMARY INTRODUCTION

1.    This is a Qui Tam action by Relator Guthrie, on behalf of the USA, against

Defendants, Alan S. Buhler, M.D. ("Dr. Buhler"); Sam Sareh, M.D. ("Dr. Sareh"); Steven R.

Hornreich, M.D. ("Dr. Hornreich"); Craig P. Prokos, M.D. ("Dr. Prokos"); Mark J. Rogovin, D.O.

("Dr. Rogovin");   Gary M. Wolfson, M.D. ("Dr. Wolfson"); Nuria Rodriguez, M.D. ("Dr. Rodriguez") (collectively "Doctor Defendants"); Doctor Spouse, Lynn Buhler ("L. Buhler"); Doctor Spouse, Christy Sareh ("C. Sareh"); Doctor Spouse, Fortuna Hornreich ("F. Hornreich"); Doctor Spouse, Cindy Prokos ("C. Prokos"); Doctor Spouse, Meredith Rogovin ("M. Rogovin"); Doctor Spouse, Stacey Wolfson ("S. Wolfson"); and, Doctor Spouse, Keiffer Wyble ("K. Wyble"), husband of Dr. Rodriguez (collectively "Doctor Defendants' Spouses"); A Plus Home Health Care, Inc. ("A Plus"); Tracy A. Nemerofsky ("T. Nemerofsky"), individually; and, Stephen L. Nemerofsky ("S. Nemerofsky"), individually, for violations of the False Claims Act, 31 U.S.C. §3729 - 3733.

2.      Defendant, A Plus, is a home health care provider which accepted Medicare referrals from the seven (7) Doctor Defendants in exchange for the payment of unentitled and bogus alleged salaries to the Doctor Defendants' Spouses in their purported capacity as alleged bona fide employees of A Plus, which they were not, for fraudulent Medicare claims. In fact and truth, the Doctor Defendants' Spouses who have been paid alleged "salaries" or "kickbacks" by A Plus aren't bona fide employees of A Plus at all and do not fall under the bona fide employee exemption of 42 U.S.C. §1395nn(e)(2), since the Doctor Defendants' Spouses' compensation paid by A Plus is based directly, more than heavily and, in some instances, almost exclusively, upon the number of referrals made to A Plus by Doctor Defendants' Spouses.

3.      Relator Guthrie believes that A Plus is currently billing the Medicare system in total approximate amounts of between $5,000,000.00 and $10,000,000.00 per year, according to statements made by T. Nemerofsky, an authorized representative of A Plus, directly to Guthrie.

4.      Relator Guthrie first became affiliated with A Plus when Professional Touch Rehab, Inc. ("Professional Touch"), a company with which Guthrie continues to have a written employment agreement, was sold in a stock purchase to Rockhill Rehab Services, Inc. ("Rockhill") in March, 2011. Rockhill was formed by Defendants S. Nemerofsky and T. Nemerofsky, for the purpose of

2

purchasing Professional Touch and other similar providers of health care services. Rockhill's principal address is identical to the principal address of Defendant A Plus. After the purchase of Professional Touch, T. Nemerofsky and S. Nemerofsky were elected President and Vice President of Professional Touch. Until mid-January, 2012, Guthrie's relationship with A Plus had been limited to occasional conferences and meetings, and informal communications with the A Plus management.

5.      Upon returning from a week's vacation in mid-January, 2012, Guthrie was informed by T. Nemerofsky that the "Marketing Director" of A Plus had resigned, and that Guthrie would be assuming the role of A Plus' "Director of Development". The main duty of Guthrie, as the Director of Development, would have been to provide the supervision of the A Plus marketing representatives ("Community Liaisons" or "CLS"). Guthrie had previously been introduced to several of A Plus' Community Liaisons, but as a result of his proposed new appointment or promotion, if such is the case, to Director of Development, he was then introduced to and/or became aware of additional A Plus CLS. Most, if not all, of the additional CLS to whom Guthrie was introduced to, or otherwise became aware of at this time, were the Doctor Defendants' Spouses who have, in the past, made and continue to make Medicare referrals to A Plus. Guthrie had previously been informed by Defendant, T. Nemerofsky, and Michael Tillis, the former Marketing Director of A Plus, that some doctors' spouses were employed by A Plus, but both informed Guthrie that these relationships were for very nominal amounts of financial remuneration, and that the CLS who were Doctor Defendants' Spouses were qualified for exceptions to the Stark Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b) ("Stark Law"), because they were "bona fide employees" of A Plus.

6.      Relator Guthrie was provided with access to A Plus' internal payroll and referral records by Defendant, T. Nemerofsky. Guthrie reviewed these A Plus internal payroll and referral records and found that the Doctor Defendants' Spouses were, in fact, highly compensated by A Plus, in amounts ranging up to approximately $60,000.00 per year, and that the Doctor Defendants'

3

Spouses' compensation from A Plus had a direct correlation to the volume of Medicare business referred to A Plus by their spouses, the Doctor Defendants.  By way of example, the relationship between A Plus and Defendant, Dr. Buhler, is at least six years old, during which period of time Dr. Buhler is believed by Guthrie to have referred more than 1,000 patients to A Plus, with projected Medicare billing revenues paid to A Plus, as a result of these referrals, in the amount of approximately $3,500,000.00, based upon the average payments projected from A Plus' Medicare billing revenues generated, as a result of referrals from Dr. Buhler in 2011, in the amount of $481,948.00.  Defendant, Dr. Buhler's Spouse, L. Buhler, has been paid approximately $250,000.00 in alleged "salary" by A Plus during the period of time over the last four (4) years.  There are at least seven (7) medical doctors and their spouses who are currently involved in A Plus' scheme, including the subject illegal Medicare kickback scheme, in violation of the Stark Law and False Claims Act, and there may be more who are or were involved, both at the present time, as well in previous years, who are yet to be discussed and identified.

7.   Upon his discovery of these relationships between the Doctor Defendants, the Doctor Defendants' Spouses and A Plus, Relator Guthrie, in January, 2012, contacted A Plus directly and informed its purported owner and President, T. Nemerofsky, that he believed these alleged employee relationships by A Plus with the Doctor Defendants' Spouses violated the Stark Law Anti-Kickback provisions, the False Claims Act, and the Florida self referral statutes, and that consequently he refused to work with or communicate with the A Plus CLS who were spouses of the referring Doctor Defendants, unless and until A Plus obtained a credible, written legal opinion establishing that A Plus' relationships with the A Plus CLS who were Doctor Defendants' Spouses were legal and in compliance with all of the Medicare statutes, rules and regulations, and all other applicable federal statutes, rules and regulations in all respects.  In response, T. Nemerofsky, the purported and on "paper owner operator", President and Director of A Plus, informed Guthrie that she was certain that

4

these relationships were legal, and that both she and A Plus had wasted enough money on lawyers, despite the constant insistence by Guthrie. T. Nemerofsky refused to seek and/or obtain any written legal opinion, as to the legality of A Plus' relationship with the Doctor Defendants' Spouses as CLS by paying them alleged salaries based either solely upon, or almost solely upon, the Medicare patient referrals to A Plus which were made by their respective Doctor Defendants spouses. Guthrie believed and believes that these relationships were patently illegal, since they were in violation of the False Claims Act and the Stark Law, and Guthrie warned T. Nemerofsky of his concerns and worries for breaking the laws.

8.     Relator Guthrie has not resigned as an employee of Professional Touch, because he needs to maintain income and, as such, he continues to work for and earn same. Guthrie hasn't engaged, in any way, in any of the illegal activities as perpetrated by A Plus. At the same time, Guthrie has reduced and limited his business involvement with T. Nemerofsky and S. Nemerofsky to the unaffected related company, Professional Touch, acquired in March, 2011, with which he has a written employment agreement.

9.     Relator Guthrie has continuously been engaged and/or otherwise employed in the Medicare industry, more specifically in the home health and outpatient therapy areas, since 1991, and has served in executive management capacities for better than two decades now. He is well educated and intelligent. Guthrie has a degree in accounting and he's modestly confident and self-assured as to his abilities to identify and understand the features and intricacies of both financial fraud and Medicare fraud.

10.    In the present case, Relator Guthrie believes that A Plus has collected payments of approximately $9,000,000.00 from Medicare over the past seven (7) years, as well as other doctor and their spouses who are yet to be discussed and identified, as a direct result of fraudulently obtained Medicare referrals received from the Doctor Defendants' Spouses, through the Doctor

*Rotella Law*
A PROFESSIONAL ASSOCIATION
1500 NORTH FEDERAL HIGHWAY, SUITE 250, FORT LAUDERDALE, FLORIDA 33304 • (954) 763-2500

Defendants and others, which Guthrie reasonably and absolutely believes have resulted in approximately 696 Medicare claims by A Plus on approximately 348 patient referrals from the Doctor Defendants during the year 2011, as well as additional Medicare claims resulting from illegal referrals which may have been made to A Plus by as yet unnamed Doctors and their spouses. Based upon the violations of the False Claims Act and Stark Law provisions in the instant case in the year 2011, Guthrie reasonably estimates that the Stark Law penalties for 2011 would be approximately $22,680,000.00. The False Claims Act treble damages for 2011 would be approximately $7,308,000.00, and the False Claims Act penalties for 2011 would be approximately $16,632,000.00, which would add up to total collectible financial recovery in this case for the year 2011 of approximately $46,620,000.00 against the core Defendants, A Plus, T. Nemerofsky and S. Nemerofsky, Doctor Defendants and Doctor Defendants' Spouses.

      11.    The breakdown of these collectible financial recovery figures are as follows:

          A.    A Plus, T. Nemerofsky and S. Nemerofsky: False Claims Act treble damages of approximately $7,308,000.00; False Claims Act penalty of approximately $7,656.000/00; and, Stark Act penalty of approximately $10,440,000.00; and,

          B.    Doctors Defendants (collectively): False Claims Act treble damages of approximately $0.00; False Claims Act penalty of approximately $8,976,000.00; and, Stark Act penalty of approximately $12,240,000.00.

      12.    The Defendant Doctors' Spouses (collectively) are responsible for the following collectible financial recovery figures for the year 2011: False Claims Act treble damages of approximately $0.00; False Claims Act penalty of approximately $8,976,000.00; and Stark Act penalty of approximately $12,240,000.00. The total amount of these collectible treble damages and

*Rotella Law*
A PROFESSIONAL ASSOCIATION
1500 NORTH FEDERAL HIGHWAY, SUITE 250, FORT LAUDERDALE, FLORIDA 33304 • (954) 763-2500

penalties owed by the Defendant Doctors' Spouses (collectively) for their violations of the False Claims Act and the Stark Act is approximately $21,216,000.00.

## PARTIES

13.     Relator Guthrie is a citizen of the State of Florida and a resident of Broward County, Florida.

14.     Defendant, A Plus, is a Florida corporation, with its principal place of business located at 1111 Hypoluxo Road, Suite 107, Lantana, Florida 33462 ("Hypoluxo Road Address"), was formed on December 17, 2003 and provides home health care services within the State of Florida, including within Broward and Palm Beach Counties. The officers of A Plus are Defendants, T. Nemerofsky, President, and S. Nemerofsky, Vice President. A Plus may be served through its Registered Agent, T. Nemerofsky, at the Hypoluxo Road Address.

15.     Defendant, T. Nemerofsky, President of A Plus, is an attorney licensed to practice law in the State of Florida., having been admitted to The Florida Bar on October 1, 1998 and assigned Florida Bar Number 150215. T. Nemerofsky was previously employed as an Assistant State Attorney for St. Lucie County, Florida. Defendant, T. Nemerofsky, is a citizen of the State of Florida and a resident of Palm Beach County, Florida and may be served at her home address at 5106 Misty Morgan Road, Palm Beach Gardens, Florida 33418. She may also be served at the Hypoluxo Road Address.

16.     Defendant, S. Nemerofsky, Vice President of A Plus, is a medical doctor and a Board Certified Orthopaedic Surgeon, who has been authorized to practice medicine in the State of Florida since December 31, 1973. Defendant, S. Nemerofsky, is also an attorney licensed to practice law in the State of Florida, having been admitted to The Florida Bar on April 21, 1994 and assigned Florida Bar Number is 998801. S. Nemerofsky is a citizen of the State of Florida and a resident of Palm Beach County, Florida. Defendant, S. Nemerofsky, may be served at his residence at 2930

7

North Ocean Drive, Apartment 16A, Singer Island, Florida 33404. He may also be served at the Hypoluxo Road Address.

17.  Defendant, Dr. Buhler, is a citizen of the State of Florida and resident of Broward County who has been authorized to practice medicine in the State of Florida since December 31, 1973. He practices medicine in Broward County, Florida and may be served at his residence at 2705 Walkers Way, Weston, FL 33331. Defendant, Dr. Buhler, may also be served at his business address at 333 Northwest 70th Avenue, Suite 116, Fort Lauderdale, Florida 33317.

18.  Defendant, L. Buhler, is Dr. Buhler's wife and is a citizen of the State of Florida. Defendant, L. Buhler, is a resident of Broward County, Florida and may be served at her residence at 2705 Walkers Way, Weston, Florida 33331.

19.  Defendant, Dr. Sareh, is a citizen of the State of Florida and resident of Broward County who has been authorized to practice medicine in the State of Florida since August 16, 2004. He practices medicine in Broward County, Florida and may be served at his residence at 11405 Northwest 18th Court, Plantation, Florida 33323. Defendant, Dr. Sareh, may also be served at his business address at 333 Northwest 70th Avenue, Suite 116, Plantation, Florida 33317.

20.  Defendant, C. Sareh, is Dr. Sareh's wife and is a citizen of the State of Florida. Defendant, C. Sareh, is a resident of Broward County, Florida and may be served at her residence at 11405 Northwest 18th Court, Plantation, Florida 33323.

21.  Defendant, Dr. Hornreich, is a citizen of the State of Florida and resident of Palm Beach County who has been authorized to practice medicine in the State of Florida since April 22, 1086. Defendant, Dr. Hornreich, practices medicine in Palm Beach County, Florida and may be served at his residence at 21555 Falls Ridge Way, Boca Raton, Florida 33428. He may also be served at his business address at 15340 Jog Road, Suite 205, Delray Beach, Florida 33446.

8

22.     Defendant, F. Hornreich, is Dr. Hornreich's wife and is a citizen of the State of Florida.  Defendant, F. Hornreich, is a resident of Palm Beach County, Florida and may be served at her residence at 21555 Falls Ridge Way, Boca Raton, Florida 33428.

23.     Defendant, Dr. Prokos, is a citizen of the State of Florida and resident of Palm Beach County who has been authorized to practice medicine in the State of Florida since August 2, 1978.  Defendant, Dr. Prokos, practices medicine in Palm Beach County, Florida and may be served at his residence at 736 Charleston Circle, Palm Beach Gardens, Florida 33410.  He may also be served at his business address at 136 Jupiter Lakes Boulevard, Suite 2000, Jupiter, Florida 33458.

24.     Defendant, C. Prokos, is Dr. Prokos' wife and is a citizen of the State of Florida.  Defendant, C. Prokos, is a resident of Palm Beach County, Florida and may be served at her residence at 736 Charleston Circle, Palm Beach Gardens, Florida 33410.

25.     Defendant, Dr. Rogovin, is a citizen of the State of Florida and resident of Palm Beach County who has been authorized to practice medicine in the State of Florida since February 10, 1993.  Defendant, Dr. Rogovin, practices medicine in Palm Beach County, Florida and may be served at his residence at 17723 Lake Azure Way, Boca Raton, Florida 33496.  He may also be served at his business address at 7730 Boynton Beach Boulevard, Suite 3, Boynton Beach, Florida 33437.

26.     Defendant, M. Rogovin, is Dr. Rogovin's wife and is a citizen of the State of Florida.  Defendant, M. Rogovin is a resident of Palm Beach County, Florida and may be served at her residence at 17723 Lake Azure Way, Boca Raton, Florida 33496.

27.     Defendant, Dr. Wolfson, is a citizen of the State of Florida and resident of Palm Beach County who has been authorized to practice medicine in the State of Florida since July 3, 1990.  Defendant, Dr. Wolfson, practices medicine in Palm Beach County, Florida and may be served at his residence at 5791 Dixie Belle Road, Palm Beach Gardens, Florida 33418.  He may also

9

be served at his business address at 1411 North Flagler Drive, Suite 7500, West Palm Beach, Florida 33401.

28.     Defendant, S. Wolfson, is Dr. Wolfson's wife and is a citizen of the State of Florida. Defendant, S. Wolfson, is a resident of Palm Beach County, Florida and may be served at her residence at 5791 Dixie Belle Road, Palm Beach Gardens, Florida 33418.

29.     Defendant, Dr. Rodriguez, is a citizen of the State of Florida and resident of Palm Beach County who has been authorized to practice medicine in the State of Florida since January 23, 2009. Defendant, Dr. Rodriguez, practices medicine in Palm Beach County, Florida and may be served at her residence/business address at 6744 Osage Circle, Greenacres, Florida 33413.

30.     Defendant, K. Wyble, is Dr. Rodriguez's husband and is a citizen of the State of Florida. Defendant, K. Wyble, is a resident of Palm Beach County, Florida and may be served at his residence address of 6744 Osage Circle, Greenacres, Florida 33413.

## JURISDICTION AND VENUE

31.     This action arises under the False Claims Act, 31 U.S.C. §§3729 - 3733.

32.     This Court maintains subject matter jurisdiction over this action, pursuant to 31 U.S.C. §§3729(a) and 3730(a) and (b) of the False Claims Act; 28 U.S.C. §1331 (Federal Question); and, Relator Guthrie has alleged damages in this action which are well in excess of $75,000.00.

33.     Venue is proper in this Court, pursuant to 31 U.S.C. §3732(a) of the False Claims Act, because the individual Defendants all reside within, or practice medicine within, or do business within the Southern District of Florida; and, (b) the corporate Defendant has offices located in the Southern District of Florida, it transacts business in the Southern District of Florida, and did so at all times relevant to this Complaint. Furthermore, as averred below, Defendants committed acts prohibited by 28 U.S.C. §3729, within the Southern District of Florida, which likewise provide the basis for this action.

10

34.     Before filing this Complaint, Guthrie served a copy of same upon the United States Attorneys office, together with a written Disclosure Statement setting forth and enclosing all material evidence and information he possesses regarding this case, pursuant to the requirements of 31 U.S.C. §3730(b)(2).

35.     Relator Guthrie has complied with all of the other conditions precedent necessary to bring the instant action.

36.     Relator Guthrie is the original source of, and has the requisite direct and independent knowledge of, all publicly disclosed information upon which any allegations contained in this Complaint are or might be deemed to be based, and he has voluntarily provided such information to the USA, by providing it together with a written Declaratory Statement before filing this action.

## **FACTUAL ALLEGATIONS**

37.     The Stark Act, 42 U.S.C. §1395, prohibits a physician from referring Medicare patients for the furnishing of certain kinds of health care services, identified as "Designated Health Services" ("DHS"), to any entity with which the physician or a member of the physician's immediate family has a financial relationship.   Any entity which provides DHS is prohibited from filing a Medicare claim for services arising from such a prohibited referral.

38.     All of the Medicare claims for DHS submitted by A Plus have been reviewed, approved, authorized, approved for filing and instructed to be filed by Defendants, T. Nemerofsky and S. Nemerofsky, prior to their filing with Medicare.

39.     Both Defendants, T. Nemerofsky and S. Nemerofsky, caused Medicare claims to be made to Medicare for DHS, including those DHS furnished pursuant to the prohibited referrals (See 42 U.S.C. §95(nn)(a) (1),(g)(1)), to A Plus by the Doctor Defendants, through the Doctor Defendants' Spouses, as described herein below.

11

## Dr. Buhler/L. Buhler Referrals To A Plus

40.     Prohibited referrals by Defendant, Dr. Buhler, resulted in Medicare revenues of approximately $481,948.00 to Defendant, A Plus, in the year 2011 alone.

41.     While L. Buhler was credited by A Plus with providing one hundred forty-four (144) Medicare patient referrals to A Plus in 2011 and received a "salary" payment in the amount of $60,000.00 from A Plus for her Medicare patient referrals in 2011, the truth is that one hundred forty two (142) of those one hundred forty four (144) Medicare patient referrals, for which Defendant, L. Buhler, was paid, were made and received by A Plus from her husband, Dr. Buhler.  As a general rule, each Medicare home health care provider, including A Plus, usually submits a minimum of two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral.  However, if a patient suffers complications, A Plus may well submit more than two (2) Medicare claims for a single doctor's referral of a particular Medicare patient, which translates to at least two hundred eighty four (284) false Medicare DHS claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Defendant, Dr. Buhler, in that same year.  These referrals were credited to Defendant, L. Buhler, by A Plus for the purpose of paying her illegal referral fees.

42.     Relator Guthrie believes that Defendant, L. Buhler, has a written Employment Contract with A Plus, according to Defendant, T. Nemerofsky, and Guthrie was shown a draft copy of the Contract.  Defendant, L. Buhler's Employment Contract, if one exists, is a sham.  Defendant, L. Buhler's compensation is directly and almost totally related to and based upon the number of Medicare patient referrals which Dr. Buhler makes to A Plus.

43.     The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information, as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week.  The A Plus CLS

12

who are doctor's spouses are treated quite differently.  Significantly, A Plus doesn't require the Doctors Defendants' Spouses CLS to file any Sales Reports or to attend the otherwise required A Plus weekly sales/marketing meetings. Although Defendant, L. Buhler, usually attends these weekly sales/marketing meetings, she is the only one of the A Plus CLS who is a Doctor Defendants' Spouse, who does attend.   Even so, Defendant, L. Buhler's attendance at these A. Plus sales/marketing meetings is woefully devoid of any considerations of A Plus' business and consists mostly of gossip and chit- chat about personal matters, absent any discussions about sales/marketing issues. Moreover, Defendant, L. Buhler, like all of the rest of the Doctor Defendants' Spouses, never filed any Sales Reports with A Plus.

### Dr. Sareh/C. Sareh Referrals To A Plus

44.      Prohibited referrals by Defendant, Dr. Sareh, resulted in Medicare revenues of approximately $173,027.00, to Defendant, A Plus, in 2011 alone.

45.      Defendant, C. Sareh, was credited by A Plus with providing sixty (60) Medicare patient referrals to A Plus in 2011 and she received a "salary" payment in the amount of $21,600.00 from A Plus for her Medicare patient referrals in 2011, and the truth is that most, if not all, of those sixty (60) Medicare patient referrals for which she was paid by A Plus in 2011 were referred by her husband, Defendant, Dr. Sareh.  As a general rule, each Medicare home health care provider, such as A Plus, usually submits at least two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral.  However, if a patient suffers complications, he or she may well submit more than two (2) Medicare claims for a single doctor's referral, which translates to at least one hundred twenty (120) Medicare claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Dr. Sareh in 2011.  These referrals were credited to Defendant, C. Sareh, by A Plus, for the purpose of paying her illegal referral fees.

*Rotella Law*
A PROFESSIONAL ASSOCIATION
1500 NORTH FEDERAL HIGHWAY, SUITE 250, FORT LAUDERDALE, FLORIDA 33304 • (954) 763-2500

46.     Relator Guthrie believes that Defendant, C. Sareh, has an Employment Contract with A Plus and Defendant, T. Nemerofsky, asserts that C. Sareh has bona fide duties with A Plus. Defendant, C. Sareh's Employment Contract with A Plus, if one exists, is a sham. Her compensation paid by A Plus in 2011 was directly related to the number of Medicare patient referrals that her husband, Defendant, Dr. Sareh, made to A Plus. The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week.   The A Plus CLS who are doctor's spouses are treated quite differently. Significantly, A Plus does not require the Doctor Defendants' Spouses to file any Sales Reports or to attend the otherwise required A Plus weekly sales/marketing meetings, and C. Sareh does neither of these things.

### Dr. Hornreich/F. Hornreich Referrals To A Plus

47.     Prohibited referrals by Defendant, Dr. Hornreich, resulted in Medicare revenues of approximately $175,000.00, to A Plus in 2011 alone.

48.     Defendant, F. Hornreich, was credited by A Plus with providing fifty eight (58) Medicare patient referrals to A Plus in 2011 and she received a "salary" payment in the amount of $30,000.00 from A Plus for her Medicare patient referrals in 2011, and the truth is that most, if not all, of those fifty eight (58) Medicare patient referrals for which she was paid by A Plus in 2011 were referred by her husband, Defendant, Dr. Hornreich.  As a general rule, each Medicare home health care provider, such as A Plus, usually submits a minimum of two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral.  However, if a patient suffers complications, he or she may well submit more than two Medicare claims for a single doctor's referral, which translates to at least one hundred sixteen (116) Medicare claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Defendant, Dr.

14

Hornreich, in 2011.  These referrals were credited to Defendant, F. Hornreich, by A Plus, for the purpose of paying her illegal referral fees.

49.     Relator Guthrie believes that Defendant, F. Hornreich, has an Employment Contract with A Plus, and Defendant, T. Nemerofsky, asserts that F. Hornreich has bona fide duties with A Plus.  Defendant, F. Hornreich's Employment Contract, if one exists, is a sham.  Her compensation paid by A Plus in 2011 was directly related to the number of Medicare patient referrals that her husband, Defendant, Dr. Hornreich, made to A Plus.  The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week.   The A Plus CLS who are doctor's spouses are treated quite differently.  Significantly, A Plus doesn't require the Doctor Defendants' Spouses to file any Sales Reports or to attend the otherwise required A Plus weekly sales/marketing meetings, and Defendant, F. Hornreich, does neither of these things.

### Dr. Prokos/C. Prokos Referrals To A Plus

50.     Prohibited referrals by Defendant, Dr. Prokos, resulted in Medicare revenues of approximately $215,732.00, to Defendant, A Plus, in 2011 alone.

51.     Defendant, C. Prokos, was credited by A Plus with providing fifty nine (59) patient Medicare patient referrals to A Plus in 2011 and she received a "salary" payment in the amount of $36,000.00 from A Plus for her referrals in 2011, and the truth is that most, if not all, of those fifty nine (59) Medicare patient referrals for which she was paid were referred by her husband, Defendant, Dr. Prokos.  As a general rule, each Medicare home health care provider, such as A Plus, usually submits at minimum of two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral.  However, if a patient suffers complications, he or she may well submit more than two (2) Medicare claims for a single doctor's referral, which translates to at

15

least one hundred eighteen (118) Medicare claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Dr. Prokos in 2011. These referrals were credited to Defendant, C. Prokos, by A Plus, for the purpose of paying her illegal referral fees.

52.    Relator Guthrie believes that Defendant, C. Prokos, has an Employment Contract with A Plus and Defendant, T. Nemerofsky, asserts that C. Prokos has bona fide duties with A Plus. Defendant, C. Prokos' Employment Contract with A Plus, if one exists, is a sham. C. Prokos' compensation paid by A Plus in 2011 was directly related to the number of Medicare patient referrals that her husband, Defendant, Dr. Prokos, made to A Plus. The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week. The A Plus CLS who are doctor's spouses are treated quite differently. Significantly, A Plus doesn't require the Doctor Defendants' Spouses to file any Sales Reports or to attend the otherwise required A Plus weekly sales/marketing meetings, and Defendant, C. Prokos, does neither of these things.

### Dr. Rogovin/M. Rogovin Referrals To A Plus

53.    Prohibited referrals by Defendant, Dr. Rogovin, resulted in Medicare revenues of approximately $100,000.00, to Defendant, A Plus, in 2011 alone.

54.    Defendant, M. Rogovin, was credited by A Plus with providing thirty five (35) Medicare patient referrals to A Plus in 2011 and she received a "salary" payment in the amount of $15,000.00 from A Plus for her Medicare patient referrals in 2011 and, the truth is that most, if not all, of those thirty five (35) Medicare patient referrals for which she was paid by A Plus in 2011 were referred by her husband, Defendant, Dr. Rogovin. As a general rule, each Medicare home health care provider, such as A Plus, usually submits a minimum of two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral. However, if a patient suffers

16

complications, he or she may well submit more than two (2) Medicare claims for a single doctor's referral, which translates to at least seventy (70) Medicare claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Defendant, Dr. Rogovin, in 2011. These referrals were credited to Defendant, M. Rogovin, by A Plus, for the purpose of paying her illegal referral fees.

55.     Relator Guthrie believes that Defendant, M. Rogovin, has an Employment Contract with A Plus and Defendant, T. Nemerofsky, asserts that M. Rogovin has bona fide duties with A Plus. Defendant, M. Rogovin's Employment Contract with A Plus, if one exists, is a sham. Her compensation paid by A Plus in 2011 was directly related to the number of Medicare referrals that her husband, Defendant, Dr. Rogovin, made to A Plus. The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week. The A Plus CLS who are doctor's spouses are treated quite differently. Significantly, A Plus doesn't require the Doctor Defendants' Spouses to file any Sales Reports or to attend the otherwise required weekly A Plus sales/marketing meetings, and Defendant, M. Rogovin, does neither of these things.

### Dr. Wolfson/S. Wolfson Referrals To A Plus

56.     Prohibited referrals by Defendant, Dr. Wolfson, resulted in Medicare revenues of approximately $62,454.00, to Defendant, A Plus, in 2011 alone.

57.     Defendant, S. Wolfson, was credited by A Plus with obtaining fifteen (15) Medicare patient referrals to A Plus in 2011 and she received a "salary" payment in the amount of $4,000.00 from A Plus for her Medicare patient referrals in 2011 and, the truth is that most, if not all, of those fifteen (15) Medicare patient referrals for which she was paid by A Plus were referred by her husband, Defendant, Dr. Wolfson. As a general rule, each Medicare home health care provider, such

17

as A Plus, usually submits a minimum of two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral. However, if a patient suffers complications, he or she may well submit more than two (2) Medicare claims for a single doctor's referral, which translates to at least thirty (30) claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Defendant, Dr. Wolfson, in 2011. These referrals were credited to Defendant, S. Wolfson, by A Plus, for the purpose of paying her illegal referral fees.

58. Relator Guthrie believes that Defendant, S. Wolfson, has an Employment Contract with A Plus and Defendant, T. Nemerofsky, asserts that S. Wolfson has bona fide duties with A Plus. Defendant, S. Wolfson's Employment Contract with A Plus, if one exists, is a sham. Her compensation paid by A Plus in 2011 was directly related to the number of Medicare referrals that her husband, Defendant, Dr. Wolfson, made to A Plus. The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week. The A Plus CLS who are doctor's spouses are treated quite differently. Significantly, A Plus doesn't require the Doctor Defendants' Spouses to file any Sales Reports or to attend the otherwise required weekly A Plus sales/marketing meetings, and Defendant, S. Wolfson, does neither of these things.

### Dr. Rodriguez/K. Wyble Referrals To A Plus

59. Prohibited referrals by Defendant, Dr. Rodriguez, resulted in Medicare revenues of approximately $21,536.00, to Defendant, A Plus, in 2011 alone.

60. Defendant, K. Wyble, was credited by A Plus with providing sixteen (16) Medicare patient referrals to A Plus in 2011 and she received a "salary" payment in the amount of $6,000.00 from A Plus for her Medicare patient referrals in 2011 and, the truth is that most, if not all, of those sixteen (16) Medicare patient referrals for which he was paid by A Plus in 2011 were referred by

18

his wife, Defendant, Dr. Rodriguez.  As a general rule, each Medicare home health care provider, such as A Plus, usually submits a minimum of two (2) claims (i.e., an initial or intake claim and a final claim) per each single doctor's Medicare patient referral.  However, if a patient suffers complications, he or she may well submit more than two (2) Medicare claims for a single doctor's referral, which translates to at least thirty two (32) Medicare claims having been made by A Plus in 2011, as a result of the prohibited referrals made to A Plus by Defendant, Dr. Rodriguez, in 2011. These referrals were credited to Defendant, K. Wyble, by A Plus, for the purpose of paying his illegal referral fees.

61.     Relator Guthrie believes that Defendant, K. Wyble, has an Employment Contract with A Plus and Defendant, T. Nemerofsky, asserts that K. Wyble has bona fide duties with A Plus. Defendant, K. Wyble's Employment Contract with A Plus, if one exists, is a sham.  His compensation paid by A Plus in 2011 was directly related to the number of Medicare referrals that his wife, Defendant, Dr. Rodriguez, made to A Plus.  The A Plus CLS who aren't doctor's spouses are required by A Plus to produce weekly Sales Reports, providing detailed information as to who they contacted to seek referrals, including the details as to how each contact progressed during the previous week.   The A Plus CLS who are doctor's spouses are treated quite differently. Significantly, A Plus doesn't require the Doctor Defendants' Spouses to file any Sales Reports or to attend the otherwise required A Plus weekly sales/marketing meetings, and Defendant, K. Wyble, does neither of these things.

### COUNT I:  VIOLATIONS OF THE FALSE CLAIMS ACT

62.     Each of the allegations contained in Paragraphs 1 through 61 above are realleged and readopted, as if specifically stated herein.

63.     As described in this Qui Tam Complaint, Defendant, A Plus, by and through its officers, agents and employees, and Defendants, T. Nemerofsky, individually, S. Nemerofsky,

*Rotella Law*
A PROFESSIONAL ASSOCIATION
1500 NORTH FEDERAL HIGHWAY, SUITE 250, FORT LAUDERDALE, FLORIDA 33304 • (954) 763-2500

individually, Dr. Buhler, Dr. Sareh, Dr. Hornreich, Dr. Prokos, Dr. Rogovin, Dr. Wolfson and Dr. Rodriguez, L. Buhler, C. Sareh, F. Hornreich, C. Prokos, M. Rogovin, S. Wolfson and K. Wyble:

        A.        Knowingly presented, or caused to be presented, to the USA a false or fraudulent claim(s) for payment or approval;

        B.        Knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim(s) approved or paid by the USA; and,

        C.        Conspired to commit a violation of sub-paragraph (a)(1)(A) and/or (a)(1)(B) of 11 U.S.C. §3729.

64.     Defendants, A Plus, T. Nemerofsky and S. Nemerofsky, authorized and ratified all of the violations of the False Claims Act committed by the various officers, agents and employees of A Plus, in connection with the use of the prohibited referrals from the Doctor Defendants to A Plus, for which the A Plus CLS who were the Doctor Defendants' Spouses received illegal kickbacks prohibited by the Stark Law. This scheme or plan by A Plus served as the basis for A Plus' submission to Medicare of an unknown number of false claims which were paid by Medicare, because Medicare was not aware that the submission of these claims for payment by A Plus, and the acceptance of Medicare's payments for these claims by A Plus, resulted in and constituted violations of the Stark Law and the False Claims Act by Defendants, A Plus, T. Nemerofsky, S. Nemerofsky, the Doctor Defendants and the Doctor Defendants' Spouses.

65.     The USA and the public fisc have been damaged as a direct result of violations of the False Claims Act by Defendant, A Plus, by and through its officers, agents and employees, Defendants, T. Nemerofsky, individually, S. Nemerofsky, individually, Dr. Buhler, Dr. Sareh, Dr. Hornreich, Dr. Prokos, Dr. Rogovin, Dr. Wolfson, Dr. Rodriguez, L. Buhler, C. Sareh, F. Hornreich, C. Prokos, M. Rogovin, S. Wolfson and K. Wyble.

*Rotella Law*
A PROFESSIONAL ASSOCIATION
1500 NORTH FEDERAL HIGHWAY, SUITE 250, FORT LAUDERDALE, FLORIDA 33304 • (954) 763-2500

66.     Relator Guthrie requests a jury trial in this action on all issues so triable, as a matter of right.

**WHEREFORE**, Relator, William C. Guthrie, on behalf of himself and the United States of America, requests that this Honorable Court grant the following relief:

A.     The entry of a judgment against Defendants, A Plus, T. Nemerofsky, individually, S. Nemerofsky, individually, Dr. Buhler, Dr. Sareh, Dr. Hornreich, Dr. Prokos, Dr. Rogovin, Dr. Wolfson, Dr. Rodriguez, L. Buhler, C. Sareh, F. Hornreich, C. Prokos, M. Rogovin, S. Wolfson and K. Wyble, for compensatory damages in an amount equal to three times the amount of damages which the United States of America has sustained, as a result of these Defendants' violations of the False Claims Act;

B.     The entry of a judgment against Defendants, A Plus T. Nemerofsky, individually, S. Nemerofsky, individually, Dr. Buhler, Dr. Sareh, Dr. Hornreich, Dr. Prokos, Dr. Rogovin, Dr. Wolfson and Dr. Rodriguez, L. Buhler, C. Sareh, F. Hornreich, C. Prokos, M. Rogovin, S. Wolfson and K. Wyble, as and for a civil penalty up to $11,000.00 for each of these Defendants' separate violations of the False Claims Act;

C.     The entry of a judgment against Defendants, A Plus T. Nemerofsky, individually, S. Nemerofsky, individually, Dr. Buhler, Dr. Sareh, Dr. Hornreich, Dr. Prokos, Dr. Rogovin, Dr. Wolfson and Dr. Rodriguez, L. Buhler, C. Sareh, F. Hornreich, C. Prokos, M. Rogovin, S. Wolfson and K. Wyble, as and for a civil penalty in an amount up to $15,000.00 for each false claim submitted by the joint actions of these Defendants in violation of the

21

Stark Act;

D.    The entry of an Order directing that Relator, William C. Guthrie, be awarded all of the costs of this action, with interest, including the costs incurred by the United States of America for its expenses related to this action;

E.    The entry of an Order directing that Relator, William C. Guthrie, be awarded all of the reasonable attorneys' fees incurred in bringing this action;

F.    The entry of an Order directing that, in the event the United States of America intervenes in and proceeds with the prosecution this action, Relator, William C. Guthrie, will be awarded an amount for bringing this action of at least fifteen percent (15%), but not more than twenty five percent (25%), of the proceeds recovered in this action;

G.    The entry of an Order directing that, in the event the United States of America does not intervene in or proceed with this action, Relator, William C. Guthrie, will be awarded an amount of at least twenty five percent (25%), but not more than thirty percent (30%), of the proceeds recovered in this action;

H.    The entry of an Order directing that Relator, William C. Guthrie, be awarded pre-judgment interest;

I.    The entry of an Order directing that a trial by jury be held on all issues so triable, as a matter of right in this action; and,

J.    The entry of an Order directing that Relator, William C. Guthrie, and the United States of America receive, any and all such further relief to which either or both of them may be entitled, as a matter of law or in equity herein.

*Rotella Law*
A PROFESSIONAL ASSOCIATION
1500 NORTH FEDERAL HIGHWAY, SUITE 250, FORT LAUDERDALE, FLORIDA 33304 • (954) 763-2500

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District Of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that on April 9, 2012, the foregoing document was hand filed as a sealed document with the Clerk of the Court, pursuant to the provisions of 31 U.S.C. §3730(2). I also certify that the foregoing document is being served this day on the United States Government, via Certified Mail, Return Receipt Requested on: Office of the United States Attorney General, Department Of Justice, 950 Pennsylvania Avenue, N.W., Service Of Process Room B-103, Washington, DC 20530-0001 and the U.S. Attorney's Office for the Southern District of Florida, U.S. Attorneys Office for the Southern District of Florida, 99 Northeast 4th Avenue, Miami, FL 33132, pursuant to Rule 4(i)(1)(A)(i) and (ii) and (B) of the Federal Rules Of Civil Procedure, and pursuant to the provisions of 31 U.S.C. §3730(2). It is further provided by 31 U.S.C. §3730(2) that this Qui Tam Complaint shall remain under seal for at least sixty (60) days and shall not be served on the Defendants until the Court so orders.

Respectfully submitted,

ROTELLA LAW, P.A.
1500 North Federal Highway, Suite 250
Fort Lauderdale, FL  33304
Telephone:     (954) 763-2500
Facsimile:     (954) 467-2231
E-Mail:        rotellagar@aol.com


By:_____
    GARY J. ROTELLA, ESQUIRE
    Florida Bar Number: 281115

ROTELLA LAW, P.A.
1500 North Federal Highway, Suite 250
Fort Lauderdale, FL  33304
Telephone:     (954) 763-2500
Facsimile:     (954) 467-2231
E-Mail:        rotellagar@aol.com


By:_____
    ROBERT P. KELLY, ESQUIRE
    Florida Bar Number: 238422

23